# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE ANN FAUGHT,<br><br>   Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI[1],<br>Acting Commissioner of Social Security,<br><br>   Defendant.<br>_____/ | Case No. 1:20-cv-00782-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

### I.    INTRODUCTION

On June 4, 2020, Laurie Ann Faught ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.  BACKGROUND

Plaintiff protectively filed an application for DIB payment on October 27, 2016, and for SSI payment on October 31, 2016, alleging in both applications that she became disabled on November 13, 2013, due to carpal tunnel syndrome, hernia, rectal impairment, bipolar disorder, depression, and anxiety. (Administrative Record ("AR") 193, 194, 318, 320, 347.) Plaintiff was born on February 19, 1965, and was 51 years old as of the alleged onset date. (AR 342.) Plaintiff has past work experience as a clerk for the United States Postal Service and can communicate in English. (AR 349.)

### A.  Administrative Proceedings

The Commissioner initially denied Plaintiff's applications for SSI and DIB benefits on December 19, 2016, and again on reconsideration on April 4, 2017. (AR 234, 239, 246, 248, 254.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 260.) At the hearing on January 18, 2019, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 38–70.)

Plaintiff testified that she was diagnosed with bipolar disorder in 2011 or 2012, and in 2013, she was having "severe flare ups." (AR 48, 50.) Plaintiff was prescribed lithium, which she took for about seven years, but the medication "wasn't doing anything." (AR 50–51.) During that time, Plaintiff was "off the chart" a few times a week and "really, really depressed." (AR 50–51.) When Plaintiff was having an episode, she would throw and break things. (AR 53.) She once threw a tricycle into the windshield of a car. (AR 53.) Plaintiff eventually switched medications to lamotrigine, which she is currently taking, and she stated that "it's been great" since. (AR 51.) Plaintiff testified that she still gets "frustrated" three to four times a month, and during these periods, she needs to take breaks. (AR 66.)

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 9, 10.)

In November 2013, Plaintiff was found to have severe carpal tunnel syndrome in her left wrist, eventually requiring surgery. (AR 48–49.) In 2015, Plaintiff also underwent surgery on her right wrist. (AR 49.) Plaintiff testified that, between 2013 and 2015, her wrists would go numb when she drove. (AR 49.) She had a hard time driving or typing on the keyboard. (AR 49.) Plaintiff described grocery shopping as "embarrassing," because she would sometimes "drop stuff." (AR 49.) Her wrists were "really good right after the surgery," but were no longer doing well—particularly her right wrist. (AR 49.) Plaintiff drops things and has pain in her elbow. (AR 49.)

Plaintiff testified that she also had a history of rectal prolapse, hemorrhoids, and hernias. (AR 54–55.) Plaintiff underwent surgery twice in the same year to fix the same hernia. (AR 61.) She will require another surgery for a different hernia. (AR 61.) Due to the hernias, Plaintiff experiences abdominal pain. (AR 57, 62–63.) She has to urinate frequently, about three to four times an hour. (AR 62–63.) Plaintiff wears braces around her abdomen for the hernia, and the braces are "constrictive," making it difficult for Plaintiff to walk around and catch her breath. (AR 61.) Bending and squatting are "awkward" because of her braces. (AR 64.) The braces are uncomfortable and make it difficult for her to focus. (AR 65.) Plaintiff testified she cannot lift more than five pounds because of the hernia. (AR 64.) Upon questioning by the ALJ, Plaintiff clarified that the surgeon who performed the surgeries for Plaintiff's hernia advised her not to lift over five pounds for six weeks. (AR 69.) Another surgeon had advised Plaintiff that if surgeries could not fix Plaintiff's hernia, she would have to "wear the hernia belt forever," at which point Plaintiff "would be limited to what [she] could lift," which might be five pounds. (AR 69.)

Plaintiff had also experienced pain in her knees and shoulders. (AR 57.) She eventually started physical therapy for her right knee because she was falling down a lot. (AR 58.) Plaintiff received injections for her knee and had been doing "really well up until recently." (AR 59.) The colder weather caused her knee to stiffen. (AR 59.) Plaintiff's pain in her left shoulder hurts when she reaches up or lifts her shoulder. (AR 63–64.)

Plaintiff further testified that she has an iron deficiency, so she becomes fatigued easily and takes naps throughout the day. (AR 65.) She usually receives infusions once or twice a year, but has been unable "to find someone to do it" in the past year. (AR 65.)

**B.     The ALJ's Decision**

In a decision dated March 19, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 18–25.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 13, 2013, the onset date (step one). (AR 18.) At step two, the ALJ found Plaintiff's following impairments to be severe: anxiety disorder, bipolar disorder, depressive disorder, a history of a mood disorder, bilateral carpal tunnel syndrome "status post release surgeries," rectal prolapse "status post resection surgery," hypothyroidism, degenerative disc disease of the lumbar spine, iron deficiency anemia, hernia "status post repair," and gastric bypass surgery in 2000. (AR 18.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 21.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a range of work at the light exertional level as defined in 20 CFR [§§] 404.1567(b) and 416.967(b). Specifically, [Plaintiff] is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours, and sit for six hours total in an eight-hour workday. [Plaintiff] is further capable of occasionally stooping, kneeling, crouching, crawling, and climbing ramps or stairs, but she is unable to climb ladders, ropes, or scaffolds. [Plaintiff] is also limited to occasionally reaching overhead and occasionally pushing and pulling overhead with the left upper extremity. In addition, [Plaintiff] needs to avoid concentrated exposure to temperature extremes, dampness, and vibration.

(AR 21.)[3] Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 23.)

---

[3] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

The ALJ determined that, given her RFC, Plaintiff was not able to perform her past relevant work as a postal clerk (step four).  (AR 24.)  The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically cashier II, cleaner, and packing line worker (step five).  (AR 25.)

On June 11, 2019, Plaintiff sought review of the ALJ's decision before the Appeals Council, which the Appeals Council denied on March 31, 2020.  (AR 1, 7.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

#### A.     Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

### B.  Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.  DISCUSSION

Plaintiff contends that the ALJ improperly discounted her testimony regarding her subjective complaints. (Doc. 19 at 29–32.) For the reasons stated below, the Court determines that the ALJ erred in his evaluation of Plaintiff's testimony and will remand the case.

**A.  Legal Standard**

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and

convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995)).

**B.  Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 23.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 23.) Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ gave only one specific reason as to why Plaintiff's testimony about the effects of her symptoms was less than credible: the testimony was inconsistent with the objective medical

evidence. (AR 23–24.) The Court finds this is not a specific, clear and convincing reason to discount Plaintiff's testimony because the ALJ may not reject a claimant's subjective statements for the sole reason that the testimony is inconsistent with the objective evidence. *See Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001). Therefore, even if the ALJ's assessment of the objective medical evidence was fair, any inconsistency between the medical evidence and Plaintiff's testimony, alone, would not be a proper basis for rejecting her subjective complaints.

In support of the contention that the ALJ properly rejected Plaintiff's testimony regarding her mental limitations, the Commissioner's briefing includes an extensive discussion of the ALJ's step two findings that Plaintiff had only mild limitations on mental functioning. (*See* Doc. 21 at 5–12.) That portion of the ALJ's opinion, however, is not directed to whether Plaintiff's testimony about her subjective complaints is credible. As the Ninth Circuit has made clear, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted). *See also Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.")

The Commissioner does not contend that the ALJ articulated reasons other than inconsistency with the medical record for discounting Plaintiff's testimony. (*See* Doc. 21 at 12–15.) Indeed, in the ALJ's opinion, there is no discussion of the other factors identified by the Ninth Circuit to be considered in weighing a claimant's credibility, such as whether Plaintiff is a credible witness or any inconsistency between her daily activities and her alleged limitations. (*See* AR 21–24.)

Therefore, the ALJ's claim that Plaintiff's subjective complaints were inconsistent with the objective findings in the medical record does not constitute a "specific, clear, and convincing reason" for rejecting Plaintiff's testimony.

///

### C. The ALJ's Error Was Not Harmless

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive―'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

The Commissioner does not contend that any error by the ALJ in evaluating Plaintiff's credibility was harmless (*see* Doc. 21), and the record establishes that the ALJ's error was not harmless. If the ALJ had credited Plaintiff's physical symptom statements regarding certain functional abilities and included appropriate limitations in the RFC, that may have changed the disability determination—especially given that Plaintiff alleged fairly significant limitations. For example, Plaintiff testified that, due to her hernia, she frequently urinates, about three to four times an hour, which would require additional breaks throughout the day. (*See* AR 62–63, 76.) Therefore, the error was not "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at

1115, and was not harmless.

### D. The ALJ's Error Warrants Remand for Further Proceedings

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful. If the ALJ changes her evaluation of Plaintiff's subjective complaints, she should incorporate any warranted additional limitations in the RFC. Conversely, there may be specific, clear and convincing reasons the ALJ can offer for discounting the testimony. *See Voisard v. Berryhill*, No. 2:17–CV–1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Plaintiff's symptom statements and adjust his RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because she has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary.

Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Indeed, Plaintiff requests remand for further proceedings in the event the Court finds harmful error. (*See* Doc. 19 at 33.)

On remand, the ALJ should reevaluate Plaintiff's symptom testimony and address any necessary changes to the RFC determination. If the ALJ again discounts Plaintiff's subjective symptoms, he can then provide an adequate discussion of the specific testimony he is discounting and the specific evidence that contradicts that testimony. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ will also need to reevaluate his conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Laurie Ann Faught and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 2, 2022**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE